## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

| | | |
|---|---|---|
| MAX RITCHIE COOKE, | ) | |
| | ) | **Docket No. 32447** |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | **Docket No. 34820** |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | **2010 Opinion No. 10** |
| | ) | |
| MAX RITCHIE COOKE, | ) | **Filed: February 23, 2010** |
| | ) | |
| Defendant-Appellant. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for second degree kidnapping, aggravated battery and assault, <u>affirmed</u>; order partially denying application for post-conviction relief, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Sarah E. Tompkins argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

WALTERS, Judge Pro Tem

Following a jury trial, Max Ritchie Cooke was found guilty of second degree kidnapping, aggravated battery, and assault. Subsequently, Cooke filed a petition for post-conviction relief, which was partially granted by the trial court. Cooke appeals his judgment of conviction and the

partial denial of his post-conviction petition. Cooke argues on appeal that the district court erred in allowing the State to introduce evidence of Cooke's past threats, that the prosecutor committed misconduct in closing argument, and that the trial court erred in partially denying his post-conviction petition. As explained in more detail below, we affirm.

## I.

## BACKGROUND

From approximately late November 2002 to early January 2003, Cooke and his wife, Alison Cooke (Alison), were in the process of separating. During this time, Cooke made several threats to a number of people that if he found out she was speaking to or seeing another man, he would kill Alison and/or himself. Alison stayed with her brother, Andrew Wanacott, intermittently throughout this period of time. Alison was staying with Wanacott on January 17, 2003, but was out with a friend all night. On this night, Cooke tried to contact Alison but was unsuccessful. He drove to Wanacott's house during the early morning hours of January 18, and waited outside for Alison to return. When Alison returned home around 3:00 a.m. Cooke confronted her. At some point, Cooke got into Alison's truck and took the keys. He drove away, speeding, with Alison still in the vehicle. Alison stated Cooke was driving erratically, they were yelling at each other, Cooke was pushing her and pulling her hair, and she attempted to get out of the truck but Cooke repeatedly locked the doors. Cooke then drove the truck off the road, through a small fence, and accelerated just prior to driving into a tree. Alison suffered severe injuries, including a brain injury.

Cooke was charged with first degree kidnapping, Idaho Code § 18-4502, aggravated battery, I.C. § 18-907, and assault with intent to commit rape, I.C. §§ 18-901, 18-909. Before trial, the State filed a notice of its intent to use evidence of Cooke's suicide threats and threats to kill Alison, pursuant to I.R.E. 404(b), to negate Cooke's claim that driving the truck off the road and into a tree was an accident. On the first day of trial, before the voir dire proceedings, the district court heard counsel's arguments concerning whether to allow such evidence. The court ruled that any threats that Cooke was going to kill Alison or himself were relevant to the issue of Cooke's intent and any prejudice did not outweigh the probative value. At trial, the prosecution called Alison, her brother and sister, two of her friends, and the man Cooke believed she was having an affair with to testify, among other things, that Cooke had made threatening statements

about killing himself and Alison. The jury convicted Cooke of second degree kidnapping, aggravated battery, and assault.

Cooke subsequently filed a petition for post-conviction relief, which was dismissed without prejudice. Cooke filed an amended petition for post-conviction relief alleging his trial counsel was ineffective by failing to timely file an appeal of Cooke's judgment of conviction and by failing to investigate or challenge Alison's competency to testify at trial. The district court summarily dismissed the petition and Cooke appealed. Thereafter, the State filed a motion with the Supreme Court to remand the case for reconsideration of Cooke's claims and an evidentiary hearing on his claim of ineffective assistance of counsel for failure to file a timely appeal. The Supreme Court granted the motion and remanded Cooke's case to the district court. The district court then held an evidentiary hearing on Cooke's post-conviction claims, after which it found that Cooke had established ineffective assistance of counsel on the claim of failure to file a timely appeal but not on the claim of failure to investigate and challenge Alison's competency as a witness. The district court vacated the prior judgment of conviction and re-entered the judgment so that Cooke could timely file an appeal.

Cooke filed an appeal from the re-entered judgment in his underlying case, Supreme Court Case No. 34820, as well as an appeal of the court's partial denial of his post-conviction petition, Supreme Court Case No. 32447. These cases have been consolidated for appellate purposes. Cooke argues on appeal that the district court abused its discretion when it permitted the State to introduce evidence of Cooke's prior threats against the victim and himself, that the prosecutor committed misconduct in closing arguments by arguing that the threats showed Cooke's criminal propensity, and that the district court erred when it partially denied his post-conviction petition based on a finding that the victim in this case was competent to testify at trial.

## II.

## DISCUSSION

### A. Admission of Past Threats Evidence

As an initial matter, and contrary to the State's assertion, past threats fall within the purview of I.R.E. 404(b). *State v. Hoak*, 147 Idaho 919, 921-22, 216 P.3d 1291, 1293-94 (Ct. App. 2009) (analyzing a defendant's past threats to physically harm the victim of a stalking charge, for which the defendant was being tried, under the I.R.E. 404(b) rubric); *State v. Alsanea*,

3

138 Idaho 733, 738-40, 69 P.3d 153, 158-60 (Ct. App. 2003) (analyzing a defendant's prior threats toward a former girlfriend, in connection with an aggravated assault against a law enforcement officer charge, for I.R.E. 404(b) admissibility); *State v. Whipple*, 134 Idaho 498, 504-05, 5 P.3d 478, 484-85 (Ct. App. 2000) (evaluating a defendant's previous threats to kill another person for I.R.E. 404(b) admissibility in defendant's trial for murdering his wife).

Cooke contends that because the district court lacked a sufficient factual basis for the evidence and did not know the nature or quantity of the threats, it could not evaluate the degree of probative value or risk of unfair prejudice of any individual threat. Alternatively, Cooke argues that the danger of unfair prejudice, due to the cumulative nature of the evidence, substantially outweighed the low probative value of the majority of the threats because they were made several weeks prior to the incident. Cooke also argues, for the first time in his supplemental brief, that the court erred by not specifically articulating for the record that it found the State's proof to be sufficient to establish Cooke actually made prior threats.

Evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). However, "other crimes, wrongs or acts" evidence may be admissible for other purposes such as proof of intent, plan, or absence of mistake or accident. I.R.E. 404(b); *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). When reviewing the admissibility of 404(b) evidence, the trial court must engage in a two-part analysis. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009); *State v. Scovell*, 136 Idaho 587, 590, 38 P.3d 625, 628 (Ct. App. 2001). The first tier involves a two-part inquiry: (1) whether there is sufficient evidence to establish the prior bad acts as fact, and (2) whether the prior bad acts are relevant to a material disputed issue concerning the crime charged, other than propensity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Such evidence is relevant only if the jury can reasonably conclude the act occurred and the defendant was the actor.[1] *Grist*, 147 Idaho

---

[1]     Cooke urges this Court to adopt either a clear and convincing evidence or a preponderance of the evidence standard applicable to the determination of whether "other acts" evidence has been established by the State. However, this Court has previously held the appropriate standard is that adopted by the United States Supreme Court in *Huddleston v. United*

at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 215, 207 P.3d at 191. On appeal, this Court treats the trial court's factual determination that a prior bad act has been established by sufficient evidence like all factual findings by a trial court. *Id.* at 214, 207 P.3d at 190. We defer to a trial court's factual findings if supported by substantial and competent evidence in the record. *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997); *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We exercise free review of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008); *Scovell*, 136 Idaho at 590, 38 P.3d at 628.

The second tier of the inquiry requires the court to balance whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. When reviewing the trial court's balancing determination we use an abuse of discretion standard. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Scovell*, 136 Idaho at 590, 38 P.3d at 628. The abuse of discretion standard is a stringent one for an appellant to meet and becomes more difficult as the probative value of the evidence in question increases. *Hoak*, 147 Idaho at 922, 216 P.3d at 1294. In determining whether the trial court abused its discretion, we inquire into: (1) whether the trial court correctly perceived the issue as a discretionary one, (2) whether the trial court acted within the bounds of its discretion and consistently with the applicable legal standards; and (3) whether the trial court reached its decision by an exercise of reason. *Grist*, 147 Idaho at 51, 205 P.3d at 1187; *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

1.  **The first tier**

---

*States*, 485 U.S. 681, 690 (1988). *State v. Kay*, 129 Idaho 507, 515, 927 P.2d 897, 905 (Ct. App. 1996). That standard is "whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Huddleston*, 485 U.S. at 690. As this Court stated in *Parmer*, 147 Idaho at 215, 207 P.3d at 191, although the Idaho Supreme Court has not specifically espoused a standard of proof, it did state that I.R.E. 404(b) evidence would only be relevant if the jury could reasonably conclude that the act occurred and that the defendant was the actor, adopting language similar to the *Huddleston* analysis. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. We held that "[i]t would be illogical to place a higher burden on the trial court's preliminary analysis of the admissibility of the proffered evidence" than that articulated in *Grist* for relevancy. *Parmer*, 147 Idaho at 215, 207 P.3d at 191. As such, the relevant standard a trial court must employ is whether there is sufficient evidence to support a reasonable conclusion that the act occurred and that the defendant was the actor. *Id.*

5

Cooke argues that, in light of *Grist* and *Parmer*, the district court was required to make a specific finding articulated on the record that the State's proof was sufficient to establish that Cooke actually made the prior threats, and that the court failed to do so in this case. Cooke also argues that, even if this Court finds such an articulation was made, the district court was without sufficient information to support that determination.

We first address whether the court was required to specifically articulate its finding that there was sufficient evidence by which a jury could reasonably conclude Cooke made the threats and take this opportunity to clarify our decision in *Parmer*. In *Parmer*, we interpreted the Idaho Supreme Court opinion in *Grist* to require that in determining I.R.E. 404(b) relevancy a trial court must articulate a separate finding that sufficient evidence exists to support a reasonable conclusion that the other crime, wrong, or act occurred. *Parmer*, 147 Idaho at 215, 207 P.3d at 191. *See also Grist*, 147 Idaho at 53, 205 P.3d at 1189. A district court can make this finding by relying on the State's oral or written offer of proof. *Parmer*, 147 Idaho at 215, 207 P.3d at 191. Affidavits, stipulations by the parties, live testimony, or more extensive evidentiary hearings for each witness are other ways a trial court may make the finding, but are not required. *Id*.

However, in *Parmer* the issue of whether the other acts actually occurred and whether the defendant was the actor was squarely before the trial court thereby necessitating an articulation on the record in order to make a proper relevancy determination. Absent the issue being brought to the district court's attention, though the trial court would obviously still make this determination, there would be no need for the district court to specifically articulate its determination on the record. In this case, the trial court never made a specific articulation of its findings because no issue was raised to the district court on that motion as to whether the defendant made these threats. The State made a prima facie showing that the threats were made by Cooke in its written and oral offer of proof; in response to which Cooke did not to object or otherwise bring to the attention of the trial court any potential issue that these threats were never in fact made by the defendant.[2] Had Cooke done so, the court may have found the need to invoke the other methods mentioned in *Parmer*--affidavits, live testimony, etc.--in order to make the initial finding that sufficient evidence existed to support a reasonable conclusion that the

---

[2] Cooke argued only that introduction of the evidence would lengthen the trial and that the prejudicial effect outweighed any probative value of the evidence.

6

other act occurred. Under that circumstance, the court would need to articulate its finding to the parties. However, this was not what occurred below. Cooke did not argue in opposition to introduction of the evidence that the threats were not made and consequently, specific articulation of a finding that the threats were made by Cooke was unnecessary. We clarify that *Parmer*'s "specific articulation" requirement only applies when the record on appeal shows the issue was squarely before the trial court and, therefore, we do not address whether the court in this case made such a finding on the record as it was not required by *Parmer* to do so. In this situation the Court will simply review whether there is substantial and competent evidence to support the lower court's unarticulated finding.

Again, to say the district court was not required to articulate its finding on the record is not to say the court was relieved of its obligation to make this determination. Therefore, we next address whether there was substantial and competent evidence to support a finding that there was sufficient evidence by which a jury could reasonably conclude Cooke made the threats. We hold there was. The State's written and oral offer of proof together informed the court that Cooke made several threats to kill Alison and himself if he found out Alison was talking to or seeing another man or if Alison tried to leave Cooke. The State's oral offer of proof informed the court that several witnesses, including Alison and "a couple of her friends and a couple of her relatives, her brother and sister" would be testifying to these threats made "roughly six or seven weeks" prior to the incident. All the threats in the offer of proof were that Cooke would kill Alison or himself if he found her with another man, so regardless of the name or number of the witnesses, or quantity of such threats, this would still be the content of the threats to which the witnesses would testify.[3] Thus, the State's offer of proof identified by title the witnesses who would testify that these threats were in fact made. There was substantial and competent evidence from which the district court could conclude a jury could reasonably find that Cooke made these threats.[4]

---

[3]    Cooke never raised an objection before the trial court to a lack of specificity with which the State identified these witnesses or the quantity of threats to which they would testify.

[4]    To the extent that Cooke is making an argument that the testimony elicited at trial did not conform to the offer of proof, this does not render a district court's sufficiency of evidence determination inadequate. *Parmer*, 147 Idaho at 217, 207 P.3d at 193. Rather, if "the actual testimony of the witness fails to comport with . . . the content upon which the district court made

## 2. The second tier

Cooke argues the court could not have acted consistently with applicable legal standards in balancing the probative value of Cooke's threats with the danger of unfair prejudice because it did not know the nature or quantity of the threats. Alternatively, Cooke argues the court did not act within the boundaries of discretion or reach its decision by an exercise of reason as the probative value of the threats were low due to the passage of time and the prejudicial value was great because of the cumulative nature of the evidence.

The quantity of other crimes, wrongs or acts admitted is a relevant consideration to a trial court's balancing of the probative value against the risk of unfair prejudice. *Parmer*, 147 Idaho at 221, 207 P.3d at 197. As the nature of I.R.E. 404(b) evidence is inherently prejudicial, "at some point the number of such witnesses can become excessive and overwhelm the probative value of the evidence" because the cumulative effect has a tendency to prove propensity and bad character. *Parmer*, 147 Idaho at 221, 207 P.3d at 197. However, because the amount of evidence appropriate to establish a common scheme, plan, absence of accident, or intent will vary with each case, the determination of at what point such evidence has become excessive is within the discretion of the trial court. *Id.* In *Parmer*, the defendant was on trial for lewd conduct with a minor because he engaged in inappropriate sexual touching during the course of providing the minor with massage services. *Id.* at 213, 207 P.3d at 189. This Court held that the district court in that case did not abuse its discretion in finding the probative value of eight different witnesses, who testified that the defendant engaged in inappropriate sexual touching with them during the course of massage services, was not outweighed by the danger of unfair prejudice. *Id.* at 214, 221-22, 207 P.3d at 190, 197-98.

Additionally, temporal proximity to the crime charged affects the probative value of I.R.E. 404(b) evidence. *See State v. Pugsley*, 128 Idaho 168, 177-78, 911 P.2d 761, 770-71 (Ct.

---

its admissibility determination, the district court may instruct the jury to disregard all or any part of the witness' testimony." *Id.* at 217, 207 P.3d at 193. Most importantly, however, Cooke never objected to any nonconformity at trial. Therefore, as a district court is not required to *sua sponte* strike portions of testimony that vary from the offer of proof, *id.*, whether the witnesses testified to other crimes, wrongs, or acts differing from the State's offer of proof does not affect our analysis in this case.

App. 1995) (noting that the district court considered the time proximity of evidence of a prior rape and found it probative to the defendant's current rape charge even though it occurred seven years prior, and holding the court did not abuse its discretion in finding the probative value was not outweighed by the danger of unfair prejudice); *State v. Blackstead*, 126 Idaho 14, 19-20, 878 P.2d 188, 193-94 (Ct. App. 1994) (holding that an event occurring several weeks prior to the crime charged was not sufficiently temporally related to be probative of the "complete story" but was sufficiently temporally related to be probative of a plan or design, and holding the trial court did not abuse its discretion in finding the probative value was not outweighed by the danger of unfair prejudice).

In this case, the district court was informed that Alison, "a couple of her friends," and "a couple of her relatives, her brother and sister" would testify to threats of "[Cooke's] intention to kill Alison Cooke if she attempted to leave him or if he found out that she was talking to a fellow on the telephone who he was suspicious of" and "about killing himself." This information conveyed to the district court the nature of the threats to be admitted as well as the witnesses who would be testifying, by title. To require the prosecutor to restate the same, or substantially the same, threat after reciting the name of each individual witness, when all relevant witnesses will be testifying to substantially the same threat is illogical. Also, although this case is unlike *Parmer* in that the offer of proof did not include the exact number of witnesses, the term "a couple" is sufficient information for the court to at least be aware that the evidence is cumulative in nature. Though best practices would be to know the exact number of witnesses in order to determine excessiveness, the trial court had sufficient information, based on its knowledge that Alison, "a couple" of friends, and "her brother and sister" would testify, that it could make a determination of whether the evidence would be excessive. The district court was sufficiently aware of the number and identity of the witnesses, the bad acts alleged, and the temporal relationship. The district court properly held that threats that Cooke intended to kill Alison, himself, or both were probative of Cooke's intent, and that the probative value outweighed the prejudicial effect.

Contrary to Cooke's alternative argument, the consistency with which Cooke made death and suicide threats for over a month prior to Cooke driving himself and Alison into a tree is highly probative of his intent to kill himself and Alison in the car crash. The relevant focus is not just on the seven-week time lapse, but rather on the progression and consistency of the

9

threats for this entire seven-week period of time. As has been shown in *Pugsley* and *Blackstead* a time lapse from several weeks to several years may not diminish the evidence's probative value depending on the purpose of the evidence. As Cooke was claiming the car crash was accidental, his intent indicating the absence of an accident was a material issue in the case and evidence tending to show that killing Alison and himself had been on Cooke's mind consistently for several weeks prior to the crash is highly probative of that intent. Therefore, the district court correctly rejected Cooke's argument, that the probative value was so low that it was outweighed by the cumulative nature of the evidence.

## B.     Prosecutorial Misconduct

Cooke next alleges that the prosecutor committed misconduct in his closing argument by improperly arguing that the prior threats evidence showed Cooke's criminal propensity to commit the offenses. Cooke did not make a contemporaneous objection to the prosecutor's remarks. When a party fails to preserve an issue for appeal through a timely objection, the issue will be reviewed on appeal only if it constitutes fundamental error. *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct. App. 1999). The Idaho Supreme Court has defined fundamental error as,

> such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*State v. Johnson*, 145 Idaho 970, 979, 188 P.3d 912, 921 (2008); *State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). The Supreme Court has also described fundamental error as "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process.'" *State v. Anderson*, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007); (quoting *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992)); *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991).

We have recently emphasized that the fundamental error doctrine "is not a mechanism for criminal defendants to obtain judicial review of every plausible claim of trial error." *State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009). A contemporaneous objection is generally required for review, making fundamental error "the exception, not the rule." *Id*. The contemporaneous objection requirement exists for a number of reasons including preventing "a

defendant from 'sandbagging' by remaining silent about a recognized error and belatedly raising the error only if the case does not conclude in his favor." *Id*.

In determining whether statements made in closing arguments are improper, we note that a prosecutor has considerable latitude in his argument and has the right to discuss inferences arising from the evidence. *Porter*, 130 Idaho at 786, 948 P.2d at 141; *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). This latitude is not boundless, however, and it is improper for a prosecutor to argue as substantive evidence matters admitted for limited evidentiary purposes. *See State v. Hairston*, 133 Idaho 496, 507-08, 988 P.2d 1170, 1181-82 (1999); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Prosecutorial misconduct in closing argument will be considered a fundamental error when it is "calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence." *Porter*, 130 Idaho at 785, 948 P.2d at 140 (quoting *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994)); *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003).

In this case, a majority of the prosecutor's comments to which Cooke assigns error were made in the context of discussing the "willful" requirement of aggravated battery. The prosecutor described the willful requirement and then stated, "[s]o, now, let's look, then, at the question of whether the crash into the tree was an accident, like he says." The prosecutor went on to discuss all the evidence, including all the I.R.E. 404(b) evidence that was presented at trial that negated a conclusion that the crash was an accident and supported a conclusion that Cooke acted with intent. Although the prosecutor did not continuously reference the words "willfulness" or "intentional" throughout this recitation of the evidence, he did make other references that would suggest he was discussing intent. For example, after discussing statements Cooke made to Alison the prosecutor stated, "[y]ou say those kind of things to people . . . that you try and hurt." Also, after discussing prior controlling behavior, domestic violence, and the circumstances surrounding the night of the crash the prosecutor asked the jury if Cooke's version of events "sound logical. . . [o]r does it sound like . . . it's time for revenge . . . it's time for comeuppance." The prosecutor went on to conclude, "the defendant's intentions . . . weren't honorable . . . [t]hey were violent." Viewed in this context, Cooke's argument that the State failed to link these allegations to Cooke's intent is unpersuasive.

11

However, the prosecutor did make a couple of comments on the I.R.E. 404(b) evidence that tend to suggest criminal propensity. Specifically, after discussing Cooke's prior history of making and carrying out threats the prosecutor asked the jury, "[i]s this being done in a vacuum or does the defendant have some kind of temper?" There appears to be no other reason for this statement than to suggest to the jury that Cooke committed the crime because his history shows that when he gets angry he carries out his threats and so he must have done so on this occasion. In his rebuttal closing argument, the prosecutor again commented on Cooke's propensity to act violently out of anger when he said "[f]irst on intent . . . you know that he is angry and you know that he acts when he is angry, whether it's filling up his house with car fumes or whether it's punching holes in the wall, whether it's grabbing Alison by the hair." Although the prosecutor referenced intent, what he was suggesting to the jury was that they could infer intent because Cooke has a propensity to act a certain way when he is angry, so they could conclude he acted that way on the night in question. This is arguing I.R.E. 404(b) evidence for its propensity value rather than for a permissible purpose, which amounts to prosecutorial misconduct.

These references to Cooke's propensity for anger do not rise to the level of fundamental error, however. As stated above, to show fundamental error, the misconduct must be so great that it inflamed the minds of the jurors, went to the foundation or basis of Cooke's rights, and so profoundly distorted his trial as to deprive him of justice. Two brief comments on Cooke's history of anger in the context of closing arguments, when the jury was instructed not to use I.R.E. 404(b) evidence for propensity and that closing arguments were not to be given evidentiary weight, did not so distort Cooke's trial that it went to the foundation of Cooke's rights to a fair trial. As stated in *Adams*, fundamental error is the exception not the rule and, though we find the prosecutor did refer to I.R.E. 404(b) evidence for the improper purpose of implying Cooke's propensity, we do not find this error so egregious as to rise to the level of fundamental error.

C.      **Ineffective Assistance of Counsel**

In his post-conviction appeal, Cooke claims the district court erred when it determined Cooke had not established Alison lacked competency, arguing that the evidence showed that more likely than not Alison had developed false memories by the time of trial. Additionally, Cooke asserts the district court erred in determining that Cooke had not established he received

ineffective assistance of counsel based on the failure of trial counsel to take action due to Alison's lack of competence.[5]

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations upon which the request for post-conviction relief is based by a preponderance of the evidence. I.C. § 19-4907; *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *McKinney v. State*, 133 Idaho 695, 699-700, 992 P.2d 144, 148-49 (1999). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Boman v. State*, 129 Idaho 520, 525, 927 P.2d 910, 915 (Ct. App. 1996); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Queen v. State*, 146 Idaho 502, 504, 198 P.3d 731, 733 (Ct. App. 2008); *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Queen*, 146 Idaho at 504, 198 P.3d at 733.

### 1.    Alison's competence

Because the crux of Cooke's arguments in his post-conviction appeal is that Alison was not a competent witness, Cooke was required to establish this contention by a preponderance of the evidence. Generally, a witness is competent unless the court finds him to be "incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." I.R.E. 601; *State v. Ransom*, 124 Idaho 703, 710, 864 P.2d 149, 156 (1993); *State v. Griffith*, 144 Idaho 356, 362, 161 P.3d 675, 681 (Ct. App. 2007). This rule creates a presumption of competency and grants the trial court the discretion to determine when the facts overcome this presumption. *Griffith*, 144 Idaho at 362, 161 P.3d at 681; *State v. Vondenkamp*, 141 Idaho 878, 882, 119 P.3d 653, 657 (Ct. App. 2005). Whether a subsequent event has modified a witness's memory and rendered it unreliable is a discretionary question left to "the entity most experienced

---

[5]    Cooke also argues the district court abused its discretion at his post-conviction evidentiary hearing when it did not admit an affidavit submitted by Alison. Cooke's argument is unsupported by the record. Alison's affidavit was admitted except for a paragraph that was an excerpt from a medical report, and the report itself was considered by the district court.

in dealing with evidentiary questions, the trial court." *State v. Iwakiri*, 106 Idaho 618, 625-626, 682 P.2d 571, 578-579 (1984). When an exercise of discretion is reviewed on appeal we inquire into whether the lower court perceived the issue as discretionary, acted within the boundaries of discretion and consistently with applicable legal standards, and reached its decision by an exercise of reason. *Vondenkamp*, 141 Idaho at 882, 119 P.3d at 657; *Ransom*, 124 Idaho at 706, 864 P.2d at 152.

In this case, Alison's doctor, Dr. Clay Ward, created a report five days after the car crash wherein he gave his opinion on Alison's memory status. The relevant portion stated:

> I do not believe that the patient is competent or even appropriate for a police or forensic evaluation or interview at this time. She does not have any recall of events leading up to the accident and is still very much in posttraumatic amnesia. My impression is that her information will likely be misleading, unreliable, and she is at risk for developing new memories or false memories rather than accurately recalling what happened prior to the impact.

Cooke relies on this portion of Dr. Ward's report in arguing that Alison was incompetent to testify at trial because she likely had incurred false memories prior to trial. However, Cooke was unable to provide the district court with evidence that Alison was subjected to any events that would have given her false memories, as is his burden. In fact, Officer Kenneth Smith testified at trial that he did not even interview Alison until February 11, 2003, almost three weeks after Dr. Ward authored his report. Cooke presents no evidence that Dr. Ward's opinion that Alison was susceptible to forming false memories was still his opinion three weeks later during the initial police interview. Not only did Cooke fail to meet his burden of producing evidence to prove the basis of his claims, much of the available evidence is contrary to his claims. Indeed, Alison's brother testified that the doctors would not let police interview Alison before Officer Smith's interview because of her brain injury, suggesting that the doctors deemed her competent at that time and authorized the interview.

Though Cooke references various portions of the trial record that indicate Alison had contact with family and friends at the hospital to support his argument that she acquired false memories, these excerpts in no way indicate the topic of conversation was the cause of the accident or give any other indication that Alison's memory was tainted. Cooke also misconstrues portions of Alison's testimony in an effort to support his argument. For example, Cooke cites to the following exchange in Alison's post-conviction testimony for the proposition that subsequent events modified Alison's memory:

14

| [Alison]: | What I remember is going down the street, driving fast, hitting a big huge bump, us flying up, landing, and then speeding again. |
|---|---|
| Q: | Okay. Do you recall a ditch in the path of the car? |
| A: | No. |
| Q. | Do you remember what caused the big bump? |
| A. | From looking at the accident scene afterwards, yes. |
| Q. | What was your recollection? |
| A. | It was a ditch. |

Cooke's reliance on this testimony is misplaced. A fair reading of the exchange indicates that Alison testified that she did not see a ditch but knew that a ditch caused the bump by looking at the accident scene afterwards. This does not indicate her memory was altered; to the contrary had she acquired a false memory, she would have answered that she remembered seeing the ditch cause the big bump, not that she acquired that knowledge by subsequent investigation.

Furthermore, the medical report was created five months prior to trial and contains no opinion that Alison would not be competent to testify after five months of recovery. Although Alison's affidavit and letter assert that she had no memory of trial, that she believed her "memory state" was faulty at the time of trial, and that she did not feel she was competent to understand what was going on at the time of trial, she refuted these statements in her post-conviction evidentiary testimony. Although Alison's testimony at the hearing was confusing and unclear at times, she did indicate that her testimony at trial was accurate to the best of her knowledge. At best, as Cooke admits, Alison gave contradictory accounts of whether she believed herself to have been competent to testify given her memory problems. This inconsistent opinion, though potentially sufficient to cast some doubt, could properly be considered by the trial court as insufficient evidence to prove that more likely than not Alison's weak memory was so impaired that it rendered her incompetent to testify. Therefore, based on all the evidence before it including Alison's testimony at the hearing, the trial court did not abuse its discretion in finding that Cooke had not met his burden of proving by a preponderance of the evidence that Alison was an incompetent witness.

### 2. Ineffective assistance

Cooke next argues that his trial counsel was ineffective because counsel failed to make a motion to exclude Alison's testimony on the basis of her incompetency, failed to adequately investigate the medical evidence regarding her incompetency, either by personally reviewing Dr. Ward's report or calling him as a witness, and failed to cross-examine Alison regarding false memories.

15

To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient, and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Suits v. State*, 143 Idaho 160, 162, 139 P.3d 762, 764 (Ct. App. 2006). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Suits*, 143 Idaho at 162, 139 P.3d at 764. Bare assertions and speculation, unsupported by specific facts, do not make out a prima facie case for ineffective assistance of counsel. *Roman v. State*, 125 Idaho 644, 649, 873 P.2d 898, 903 (Ct. App. 1994).

In determining whether an attorney's failure to pursue a motion in the underlying criminal action constitutes ineffective assistance of counsel, this Court may consider whether the motion would have been successful. *Sanchez v. State*, 127 Idaho 709, 713, 905 P.2d 642, 646 (Ct. App. 1995); *Huck v. State*, 124 Idaho 155, 158, 857 P.2d 634, 637 (Ct. App. 1993). If this Court determines that the motion, if pursued, would not have been granted by the trial court, then generally counsel will not be found deficient for failing to pursue it and the petitioner could not have been prejudiced by the lack of pursuit. *Sanchez*, 127 Idaho at 713, 905 P.2d at 646; *Huck*, 124 Idaho at 158-59, 857 P.2d at 637-38.

Tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Suits*, 143 Idaho at 162, 139 P.3d at 764; *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). Cross-examination strategy is a tactical decision. *State v. Payne*, 146 Idaho 548, 563 n.2, 199 P.3d 123, 138 n.2 (2008); *State v. Osborne*, 130 Idaho 365, 373, 941 P.2d 337, 345 (Ct. App. 1997). When reviewing a claim of inadequate trial preparation, the defendant must show that a more thorough investigation would have produced a different result at trial. *Parrott v. State*, 117 Idaho 272, 275, 787 P.2d 258, 261 (1990). In *Parrott*, the defendant asserted his trial counsel failed to conduct an investigation into, among other things, the victim's veracity and prior sexual conduct. *Id*. The Supreme Court noted that even if it accepted the defendant's allegations that his attorney's pretrial investigation

16

was deficient, the defendant had not shown that his trial counsel would have discovered evidence concerning the victim's lack of veracity or her reputation for promiscuity. *Id*. Therefore, the defendant could not show that the lack of trial preparation would have produced a different result at trial, and thus could not show prejudice. *Id*.

In this case, Cooke has not shown that his trial attorney's performance was deficient or that he was prejudiced by any alleged deficiency. As we have already determined that no evidence suggests Alison was incompetent to be a witness at the time of trial, any motion to exclude her from being a witness would not have been successful. Therefore, in accordance with the principles set out in *Sanchez* and *Huck*, Cooke's trial counsel cannot be found deficient, and Cooke cannot be said to have been prejudiced, for the failure to pursue a motion that would not have been granted.

Additionally, although cross-examination is a tactical decision that we would not normally second-guess on appeal, Cooke argues that the deficiency in cross-examination resulted from inadequate trial preparation. Cooke is not concerned that his trial counsel's cross-examination was insufficient to point out that Alison had a faulty memory, rather the crux of Cooke's argument is that trial counsel should have been prepared to cross-examine Alison about the potential for her to have developed a false memory. However, Cooke has only made allegations that a more thorough investigation was warranted because such investigation had the *possibility* of showing that Alison was subjected to outside influences that *may* have resulted in false memories. Like the defendant in *Parrott*, Cooke has not produced any evidence that his trial counsel would have actually discovered outside influences or that such influences actually caused Alison to create false memories. Indeed, Cooke simply relies on the medical report that was created almost three weeks before any formal interview concerning the car crash. He did not introduce any other evidence that family members or friends who were with her at the hospital during this memory-sensitive time were introducing false memories concerning the incident. Furthermore, Alison's opinion as to her own competence has been inconsistent at best and does not raise Cooke's proof to a level beyond mere speculation. This argument is the sort of bare assertion and speculation, unsupported by facts, which this Court rejected in *Roman*. As Cooke has not shown any prejudice, the district court did not err in concluding that he had not met his burden of establishing ineffective assistance of counsel.

**III.**

17

**CONCLUSION**

Because we find that the district court did not err in allowing evidence of Cooke's past threats and that the prosecutor did not commit misconduct in closing argument rising to the level of fundamental error, we affirm the district court's judgment of conviction. Also, as we hold that the trial court did not err in determining Cooke failed to meet his burden of proving Alison was an incompetent witness or that he received ineffective assistance of counsel, we also affirm the partial denial of Cooke's post-conviction petition.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**