IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39684

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | **2014 Opinion No. 32** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: April 22, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| FRANK DONALD MARKS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

Judgment of conviction and sentences for three counts of lewd conduct with a minor, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentences, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Frank Donald Marks appeals his judgment of conviction for three counts of lewd conduct with a minor and the order denying his motion for reduction of his sentences. At issue is whether the district court erred at trial by excluding the testimony of a medical expert for the defense and by admitting testimony of uncharged sexual misconduct with another minor, and whether Marks's sentences are excessive.

## I.

## BACKGROUND

Marks was charged with three counts of lewd contact with a minor under sixteen, Idaho Code § 18-1508. The charges were based on allegations that Marks had sexually abused two biological daughters and a stepdaughter living in his home. Marks's first trial ended in a mistrial

when the jury was unable to reach a verdict. At his second trial, the jury found Marks guilty of all three counts. The district court imposed concurrent unified sentences of life with thirty years fixed. Marks filed a motion under Idaho Criminal Rule 35 to reduce his sentences. That motion was denied. Marks appeals.

## II.

## ANALYSIS

Marks first asserts two claims of trial error. He contends that the court abused its discretion and violated his constitutional right to present a defense by excluding a physician from testifying for the defense. He also argues that the trial court erred by permitting a daughter who is not an alleged victim in this case to testify that Marks had also molested her.

### A. Exclusion of Medical Expert's Testimony

The alleged victims in this case underwent medical examinations while in the custody of the Department of Health and Welfare. Marks had the records of these examinations reviewed by Dr. Stephen Guertin, a physician who is board-certified in pediatric medicine and an expert in child abuse diagnosis and treatment. Dr. Guertin prepared a report concerning the medical examinations and his review of the evidence produced at the preliminary hearing and at Marks's first trial. The majority of his report recounted the testimony of the alleged victims and gave his observations of inconsistencies in the witnesses' testimony and changes in each witness's statements over time. In these portions of the report, Dr. Guertin drew inferences regarding witness motivations to fabricate and opined as to witness credibility. A small remainder of the report contained statements that could be deemed medical observations.

The State filed a motion to exclude Dr. Guertin's testimony. At the hearing on the motion, the parties and the court treated Dr. Guertin's report as an offer of proof.[1] The district court held that Dr. Guertin would not be permitted to testify regarding the credibility of the victims as it would usurp the role of the jury in determining credibility. Marks does not dispute that ruling on appeal. The court also excluded the remainder of the proffered testimony as speculative and creating the risk of jury confusion. On appeal, Marks apparently challenges only the district court's exclusion of a portion of Dr. Guertin's proposed testimony relating to the examination of one of the victims, K.M. Marks argues that exclusion of this evidence was

---

[1]     For example, Marks's counsel said, "The composition of his testimony has been submitted previously by way of his written opinion that the Court has and counsel has."

inconsistent with the Idaho Rules of Evidence and amounted to a denial of his constitutional right to present a defense.

To be admissible, evidence must be relevant. I.R.E. 402. Relevant evidence means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Whether evidence is relevant is a question of law that this Court reviews de novo. *State v. Joy*, 155 Idaho 1, 6, 304 P.3d 276, 281 (2013); *State v. Shackelford*, 150 Idaho 355, 363, 247 P.3d 582, 590 (2010). Testimony that amounts to speculation or conjecture is not relevant and therefore not admissible. *Slack v. Kelleher*, 140 Idaho 916, 923, 104 P.3d 958, 965 (2004) (when an expert's testimony is speculative, it is properly excluded as irrelevant).

Under I.R.E. 702, a party may present opinion testimony of an expert witness when that expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "Expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict and, therefore, is inadmissible as evidence." *Weeks v. E. Idaho Health Servs.*, 143 Idaho 834, 838, 153 P.3d 1180, 1184 (2007). A trial court has discretion in the admission or exclusion of expert testimony, and its decision will be reviewed for an abuse of discretion. *State v. Perry*, 139 Idaho 520, 521-22, 81 P.3d 1230, 1231-32 (2003); *State v. Critchfield*, 153 Idaho 680, 683, 290 P.3d 1272, 1275 (Ct. App. 2012).

On appeal, Marks has not precisely identified which portion of Guertin's proposed testimony he contends was improperly excluded, but he appears to contend that Dr. Guertin should have been allowed to testify that the medical examination of K.M. indicated that she had not been molested. In his report, Guertin reasoned that if vaginal intercourse had occurred at the ages to which K.M. testified, it would have caused transections to the hymen that would persist and would have been observable to the physician who examined her, and because the record of that examination did not report any transection of the hymen, K.M. must not have been subjected to vaginal intercourse as she alleged.

We conclude that this testimony was properly excluded because it was based on speculation as to what the examining physician did or did not observe. The record from the medical examination is labeled a "consultation" and is not focused on allegations of sexual abuse. Instead, the examining physician performed a general check-up. The only notation

3

regarding a vaginal examination is the following: "genital findings were normal externally, unable to perform speculum exam due to patient's anxiety." Dr. Guertin's report assumed that the examination was performed to investigate sexual abuse, an assumption that is not supported by the record. Dr. Guertin also assumed that the examining physician actually observed K.M.'s hymen in the course of the external examination and that because no notation was made concerning the condition of the hymen, there must have been no transection of the hymen. Based upon this series of assumptions, Dr. Guertin infers that K.M. must not have been subjected to vaginal intercourse as she alleges. The record, however, does not support the fundamental premise underlying Dr. Guertin's opinion--that the physician's external examination included visual observation of the hymen. The record of the examination does not say that the hymen was viewed; indeed, it suggests the contrary. Therefore we, like the district court, conclude that Dr. Guertin's opinion is impermissibly speculative as it is based upon an unsubstantiated, conjectural premise. Because the opinion is speculative, it was not relevant nor permissible expert opinion testimony under Rule 702 because it would not assist the trier of fact.

Marks also argues that the exclusion of Dr. Guertin's testimony violated his constitutional right to present a defense. That right "is rooted in the Compulsory Process or Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, and . . . includes the right to offer testimony of witnesses, to compel their attendance, and to present the defendant's version of the facts." *State v. Molen*, 148 Idaho 950, 956, 231 P.3d 1047, 1053 (Ct. App. 2010). That right does not, however, permit an accused to present irrelevant evidence. *Id.* at 956-57, 231 P.3d at 1053-54; *State v. Kerchusky*, 138 Idaho 671, 676, 67 P.3d 1283, 1288 (Ct. App. 2003). Therefore, the exclusion of Dr. Guertin's proposed speculative testimony did not deny Marks's right to present a defense.

## B.     Evidence of Other Misconduct

The State filed a notice pursuant to I.R.E. 404(b) of its intent to present the testimony of B.K.M., one of Marks's daughters, that she also had been molested by Marks, though that conduct was not the subject of any of the charges in the present case. The State said B.K.M. would testify as to conduct similar to that testified to by the three complaining witnesses in this case. The State argued that this evidence was relevant to "plan, preparation, and intent." It also argued that the evidence was admissible as corroboration of the alleged victims' testimony under *State v. Grist*, 147 Idaho 49, 53, 205 P.3d 1185, 1189 (2009).

4

Marks objected that the evidence was being used to show propensity to commit the type of offense with which he was charged, and thus was inadmissible under I.R.E. 404(b). He also asserted that any possible relevance was outweighed by the risk of unfair prejudice and that the State should be estopped from submitting this evidence based upon delay and the failure of prior attempts to have Marks charged for conduct relating to B.K.M.

The trial court held that the evidence was relevant to "motive, opportunity, intent, preparation, common scheme or plan" and should not be excluded as unfairly prejudicial. At trial, the court gave a limiting instruction stating that the evidence could only be considered as it related to "motive, opportunity, intent, or knowledge." Thereafter, B.K.M. testified that her father repeatedly sexually abused her, beginning at the age of eight or nine, by demanding anal intercourse in exchange for candy or permission to play with friends. She described who was at home at the time of the assaults, at which home the family was living, and the estimated number of times the molestations took place each year. On appeal, Marks argues that the trial court's evidentiary ruling was insufficient and conclusory, and that the court erred in finding that the testimony was relevant to a permissible purpose and not unfairly prejudicial.

Marks's objection was based upon I.R.E. 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of misconduct other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *Grist*, 147 Idaho at 54, 205 P.3d at 1190. *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other

acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

Marks first argues that the trial court failed to determine "whether there is sufficient evidence to establish the prior bad acts as fact." This Court has held, however, that the trial court is required to make a specific articulation as to whether there is sufficient evidence that the prior conduct occurred only if that question is squarely at issue. *State v. Gomez*, 151 Idaho 146, 151, 254 P.3d 47, 52 (Ct. App. 2011); *Cooke v. State*, 149 Idaho 233, 240, 233 P.3d 164, 171 (Ct. App. 2010). Marks did not put the sufficiency of the State's evidence "squarely at issue." He noted that B.K.M. had originally told the authorities she had not been assaulted, but then changed her story. This comment was not an attack on the veracity of the witness, however, but part of Marks's estoppel argument that he has abandoned on appeal. Moreover, because of a prior attempt to consolidate the cases, the parties and the court were aware that another court had found probable cause to bind Marks over on new charges relating to B.K.M. On appeal, Marks does not claim that there was insufficient evidence to support a finding that the acts occurred; nor has he presented a record containing the materials available to the district court when it rendered its decision. Accordingly, we conclude that no error is shown.

Marks next complains that the court did not provide a reasoned analysis explaining why the evidence was relevant to "motive, opportunity, intent, preparation, common scheme or plan." He appears to argue that this, standing alone, is a sufficient basis for reversal. We disagree. Although we encourage trial courts to provide a more specific explanation of the issues *in the particular case* to which they find challenged evidence to be relevant, we know of no authority requiring an expansive analysis. Here, the district court identified the purposes, permissible

6

under Rule 404(b), for which it found the evidence relevant. Marks has cited no authority requiring the trial court to do more.

As to the relevance prong of Rule 404(b) analysis, Marks argues only that the evidence was not relevant as evidence of a common scheme or plan. However, the trial court held that the evidence was relevant for several purposes, only one of which was "common scheme or plan."[2] Among the other purposes was "opportunity." We conclude that the district court correctly held the evidence relevant for this purpose, for Marks's defense at trial was largely a contention that he would have had no opportunity to commit the offenses as alleged because of the large number of people that were occupying his home where the molestations allegedly occurred.

We addressed a similar issue in *Gomez*, and held that evidence of uncharged molestations was relevant to show opportunity, in large part because the defendant argued that he lacked any opportunity to sexually assault a minor living in his home. In that case, the defendant was charged with a single count relating to a single child, but the court permitted five witnesses to testify that the defendant had sexually assaulted them as children. The trial court reasoned that the central issue in the case was credibility and that the issue of credibility largely turned on whether the defendant's claim of limited opportunity was believed. On review, we concluded

---

[2]     The words "common scheme" do not appear in I.R.E. 404(b). Indeed, the use of that phrase predates the adoption of the Idaho Rules of Evidence. *See, e.g.*, *State v. Montgomery*, 48 Idaho 760, 767, 285 P. 467, 469 (1930) (holding that evidence of other crimes may be admissible when it "tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others"). Nonetheless, even after the adoption of the Idaho Rules of Evidence, the phrase continues to be used as legal shorthand. In recent cases, the Idaho Supreme Court said that "preparation, plan, knowledge, [and] identity . . . are most frequently grouped together under the rubric of 'common scheme or plan.'" *State v. Joy*, 155 Idaho 1, 9, 304 P.3d 276, 284 (2013); *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). In another case, "knowledge, identity, or absence of mistake or accident" were grouped under the general category of "common scheme or plan." *State v. Johnson*, 148 Idaho 664, 668, 227 P.3d 918, 922 (2010). We think it important, however, to recognize that evidence may be relevant for specific purposes listed under I.R.E. 404(b) (and possibly for other appropriate purposes not listed in Rule 404(b)) even though the prior conduct is not linked to the charged conduct by a common plan or scheme. For example, evidence that the defendant was in illegal possession of a certain weapon for years prior to a robbery in which a weapon of that type was used may be relevant to demonstrate the defendant's identity as the person who committed the robbery, even though acquisition of the weapon was not part of any underlying plan to commit the robbery. Each item of proffered evidence must be carefully evaluated to determine whether it is relevant even in the absence of a "common scheme or plan."

that the trial court did not abuse its discretion because it gave a proper limiting instruction and because the testimony was probative in that the issue of opportunity was material and disputed. *Gomez*, 151 Idaho at 156, 254 P.3d at 57.

*Gomez* is indistinguishable from the present case. Marks argued, as a defense, that he would have had no opportunity to commit the alleged offenses, given the number of people inhabiting his home. For example, the victim's grandmother testified that she had been a frequent houseguest during the time of the abuse and had not observed any indicia of abuse while she was in the home. She also testified concerning which doors in Marks's home could be locked, a question relevant to Marks's ability to hide his conduct. Likewise, another relative testified that she lived in the home for a total of ten months, that Marks worked long hours in the after-school periods she was in the home, and that she had never observed Marks take the victims into his bedroom and lock the door. In all, Marks called at least nine witnesses to testify that they had been in his home and not observed any indicia of sexual abuse. Moreover, Marks emphasized this evidence in closing remarks; he argued that it was "unlikely . . . that a man is going to pull three little girls in a bedroom or one at a time in a bedroom when there is this many people in and out of the house." The victim at issue, B.K.M., provided testimony that rebutted the lack of opportunity defense. For example, she described the actions her father took to hide his behavior including waiting until her mother and other adults were out of the home, separating her from her siblings, and offering rewards and treats. Her testimony that she was sexually assaulted within the same time period as some of the charged offenses tended to show that Marks had the opportunity to assault young girls living in his home. Because Marks put his opportunity to commit the offense at issue, it was not error to admit evidence showing that Marks did have the opportunity to commit the offense.

Lastly, Marks contends that any probative value of B.K.M.'s testimony was outweighed by unfair prejudice. He contends that, to the extent the evidence was relevant to any purpose permissible under I.R.E. 404(b), its relevance was limited because it was cumulative to the similar testimony of the three complaining witnesses, and he argues that this limited relevance was substantially outweighed by the risk of unfair prejudice arising from the jury hearing of uncharged prior bad acts. *Joy*, 155 Idaho at 9, 304 P.3d at 284.

We are not persuaded. Although the evidence of a fourth abused child was potentially cumulative and carried some risk that the jury would use it for an improper purpose, we

conclude, as we did in *Gomez*, that the trial court did not err when it found that the risk of unfair prejudice did not substantially outweigh the probative value of B.K.M.'s testimony to rebut Marks's claims in defense. The trial court also gave a proper limiting instruction, explicitly prohibiting the jury from considering the testimony as propensity evidence.

## C.     The Trial Court Did Not Err in Sentencing Marks

Marks was sentenced to three concurrent unified life sentences, with thirty years fixed. He argues that his lack of prior criminal conduct, the abuse he suffered in childhood, and his history of gainful employment were significantly mitigating. Additionally, Marks argues that the sentencing court treated him unfairly by punishing him for failing to take responsibility for his actions. Marks points out that he passed two polygraph examinations and consistently asserted his innocence. He contends that because he cannot simultaneously assert his innocence and take responsibility, he has been treated unfairly.

Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

It is impermissible for a court to penalize a defendant merely because he or she exercises the constitutional right to put the government to its proof at trial. *State v. Kellis*, 148 Idaho 812, 814, 229 P.3d 1174, 1176 (Ct. App. 2010). However, "a court is not entirely prohibited from considering continued assertions of innocence as a factor in the sentencing decision. Rather, a court may properly consider a defendant's refusal to acknowledge guilt when evaluating the defendant's rehabilitation potential because acknowledgment of guilt is a critical first step

toward rehabilitation." *Id*. at 815, 229 P.3d at 1177. We exercise free review when determining whether a constitutional right has been violated in light of the facts of the individual case. *Id*. at 814, 229 P.3d at 1176.

In sentencing Marks, the district court explained, "The abuse to which these young girls testified to is some of the most severe, chronic sexual abuse that I have ever heard in 27 years of practice of the law and being a Judge." It also noted the anguish and disruption Marks caused in the lives of his victims. Thereafter, it explicitly considered retribution, general and specific deterrence, rehabilitation, and protection of the public as they related to sentencing. Although the court acknowledged that Marks was in a difficult position given his continued assertion of innocence, it also noted that the court was bound by the jury's verdict. The court noted that in view of Marks's apparent refusal or inability to take responsibility for his offenses, it was unlikely that he could be rehabilitated in prison and, therefore, he would continue to present a risk to society. The court also reasoned that Marks would continue to be a risk if he was paroled in twenty years. The court said, "I have been around long enough to know that as a sex offender you are not going to be rehabilitated until you have admitted what you did wrong." Accordingly, the court imposed a thirty-year fixed term because, after thirty years, his risk to society would be significantly mitigated.

To the extent Marks has advanced a constitutional challenge to his sentence, he has not shown that the court penalized him for putting the government to its proof. Instead, we conclude that the court permissibly considered Marks's assertions of innocence when determining whether rehabilitation was likely.

We are also unpersuaded that Marks's sentence is excessive. At trial, the State proved that Marks subjected his victims to horrific, repeated sexual abuse. His lack of other criminal conduct and the polygraph examinations notwithstanding, after our independent review of the record, we cannot say that the sentence is a clear abuse of discretion.

## D.      Denial of Marks's Motion to Reduce his Sentence

Marks also argues that the court erred by denying a Rule 35 motion seeking leniency. The court held a hearing on the matter in which Marks was permitted to testify. Marks relayed a hearsay report indicating that the victims were upset with the sentence imposed and thought it too harsh. The court indicated that it would consider that report to be true for the purpose of the motion. It also said, however, "It is not unusual in a case where you have extended periods of

traumatic issues as occur in sexual abuse cases that the victim ultimately shows empathy for the perpetrator. . . . So I don't put much weight in [what] the girls think." On appeal, Marks argues that the court abused its discretion and violated article I, section 22 of the Idaho Constitution by insufficiently considering the import of the victims' wishes.

Marks's constitutional claim is meritless. First, it is supported by no admissible evidence. Marks presented only his own self-serving report of what the victims had supposedly said about the sentence; he presented no affidavits or testimony from any of the victims themselves. Second, the trial court did not deny any victim her right to be heard, as guaranteed by article I, section 22(6) of the Idaho Constitution. Moreover, article I, section 22 does not confer upon criminal defendants the ability to assert victim's rights violations as error. For all of these reasons, we conclude that this claim of error is utterly without merit.

We turn lastly to Marks's argument that the court abused its discretion by not reducing his sentences. A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984). Upon review of the record, we conclude that no abuse of discretion has been shown.

### III.

### CONCLUSION

For the reasons set forth above, we conclude that Marks has failed to show any error. Therefore, Marks's judgment of conviction and sentences, and the order denying his Rule 35 motion, are affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**